UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIANE KOLLMORGEN | ) | CASE NO. 1:11CV2020 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Diane Kollmorgen Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) . The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his April 27, 2011 decision in finding that Plaintiff was not disabled because she could perform her past relevant work as a housekeeping cleaner (Tr. 6-17). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

**I.      PROCEDURAL HISTORY**

Plaintiff, Diane Kollmorgen, filed her application for DIB and SSI on February 10, 2009, alleging she became disabled on January 28, 2009 (Tr. 127, 129). Plaintiff's application was denied initially and on reconsideration (Tr. 86, 87). Plaintiff requested a hearing before an ALJ, and on February 24, 2011, a hearing was held where Plaintiff appeared with counsel and testified before an

ALJ and Bruce Holderead, a vocational expert (VE), also testified (Tr. 22-72).

On April 27, 2011, the ALJ issued his decision, finding Plaintiff not to be disabled (Tr. 6-17). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 4-5). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g) and 42 U.S.C. Section 1383©.

## II.     STATEMENT OF FACTS

Plaintiff was born on July 25, 1969, and was forty years old at the time of the hearing. She has an eighth-grade education and past relevant work as a housekeeping cleaner, which was light and unskilled work (Tr. 33, 65).

## III.    SUMMARY OF MEDICAL EVIDENCE

Plaintiff is only challenging the ALJ's findings with respect to her alleged physical impairments. Plaintiff has a history of treatment for neck and back pain with occupational medicine specialist M.P. Patel, M.D. On January 7, 2009, approximately twenty days before Plaintiff's alleged onset of disability, Dr. Patel reported that Plaintiff's condition was "fairly stable, except for occasional exacerbations requiring activities restriction and an increase in medications. Exacerbations were short in duration and not lasting more than a few hours. No significant difficulty with walking or standing" (Tr. 392). Dr. Patel prescribed Vicodin and Zanaflex, and instructed Plaintiff in a home exercise program to increase her strength and flexibility (Tr. 392). Dr. Patel opined that Plaintiff was able to return to work activities (Tr. 393).

On February 4, 2009, Dr. Patel reported that Plaintiff's condition was stable with her medications and home therapy, and that she had no significant difficulties of daily living (Tr. 390). Dr. Patel reported that Plaintiff had a fair response to her medications with improvement in mobility and her radicular symptoms (Tr. 390).

On March 24, 2009, Dr. Patel reported that Plaintiff's neck and back pain were primarily activity related and that she had mild pain with rest, and moderate pain with activity (Tr. 386). Examination of Plaintiff's cervical spine revealed mild tenderness of the spine and paraspinal musculature with no significant restriction in mobility (Tr. 386). Examination of Plaintiff's lumbar spine revealed vertebral tenderness and spasm and tenderness at the paralumbar muscles and along the posterior superior iliac into the buttocks (Tr. 286). Plaintiff's flexion and extension were normal, except for pain at the extreme ranges of motion (Tr. 386).

On April 21, 2009, Dr. Patel reported that Plaintiff had no significant restriction of mobility of her cervical spine, generally normal range of motion of the lumbar spine, a normal gait, and no neurological abnormalities of her lower extremities (Tr. 379). On June 7, 2009, a CT of Plaintiff's abdomen revealed evidence of bilateral sacroilitis (Tr. 345). Dr. Patel's objective findings were unchanged through September 29, 2009 (Tr. 371, 373, 375, 377).

On August 28, 2009, Gerald Klyop, M.D., a state agency physician, reviewed Plaintiff's medical records and opined that she was capable of performing medium work that required no more than occasional crawling; no climbing of ladders, ropes, or scaffolds; and no more than frequent bilateral reaching (Tr. 351).

On September 29, 2009, Dr. Patel opined that Plaintiff was capable of working (Tr. 372). Thereafter, on December 22, 2009, Dr. Patel again opined that Plaintiff was "able to continue with work activities" (Tr. 368).

On February 2, 2010, Dr. Patel reported that Plaintiff had only mild restriction in the extreme ranges of motion of her cervical and lumbar spines due to pain and muscle spasm (Tr. 366). He continued to prescribe medications and a home exercise program (Tr. 367).

On March 9, 2010, Dr. Patel reported that Plaintiff's gait was normal and that she had no significant difficulty with turning her neck in either direction (Tr. 364). Plaintiff had a mild increase in pain with looking up or down (Tr. 364). Plaintiff's moderate low back pain was aggravated with bending or lifting (Tr. 364).

On April 20, 2010, Plaintiff reported increased pain with activities such as bending, lifting, walking, standing, and looking up or down or turning sideways (Tr. 362). Plaintiff's straight leg raising test was positive bilaterally at 25 degrees, and she had difficulty attempting heel-toe walking (Tr. 362). Dr. Patel recommended that she undergo an MRI of her lumbar spine (Tr. 364).

On April 26, 2010, Plaintiff underwent an MRI of her lumbar spine, which showed multilevel degenerative changes with diffuse bulges at L4-L5 and L5-S1 without canal or foraminal stenosis (Tr. 360). Additionally, the MRI showed signs of facet degenerative changes and ligamentum flavum hypertrophy bilaterally at the level of T11-T12, which caused mild posterior compression of the thecal sac (Tr. 360).

A CT of Plaintiff's lumbar spine, on May 11, 2010, revealed degenerative changes, most prominently affecting the facet joints at all levels from T12 through S1, resulting in some encroachment on the canal and the left L4 neural foramen (Tr. 359). Additionally, it showed chronic changes of the sacroiliac joints (Tr. 359).

On June 3, 2010, Plaintiff complained of mild to moderate neck pain and intermittent low back pain (Tr. 357). Dr. Patel reported that Plaintiff had mild paravertebral muscle tightness and spasm involving the entire posterior cervical region and some restricted mobility (Tr. 357). She had

vertebral tenderness, spasm, and tenderness of her paralumbar muscles with a positive straight leg raising test at 65 degrees (Tr. 357). Dr. Patel referred Plaintiff to MetroHealth Medical Center Pain Management/ Spine Center (Tr. 357-58).

On July 15, 2010, Plaintiff complained of variable neck and low back pain and difficulty with turning her neck fully in either direction (Tr. 432). Dr. Patel continued to prescribe medications and home exercises (Tr. 433).

From September 2, 2010 through January 5, 2011, Dr. Patel reported fairly consistent objective findings (Tr. 424-30). During this period, Plaintiff had no significant restriction of mobility in her cervical or lumbar spine, except with right and left lateral lumbar flexion, which was limited to 25 degrees (Tr. 424, 426, 428, 430). Otherwise, her range of motion was normal with pain at the extreme ranges of motion (Tr. 424, 426, 428, 430). Dr. Patel again referred Plaintiff to the pain management clinic at MetroHealth (Tr. 431). These is nothing in the record that Plaintiff went to MetroHealth for treatment.

### IV.    SUMMARY OF TESTIMONY

At the hearing held before the ALJ on February 24, 2011, Plaintiff appeared and testified, as did the vocational expert, Bruce Holderead (Tr. 22-72).

Plaintiff testified that she experiences chronic pain in her neck and legs, which she rated on a scale of one to ten as a ten before medication and a six after medication (Tr. 41). She testified that walking, standing and lifting her legs aggravates her pain (Tr. 42). Plaintiff explained that she gets pain and tingling in her arms and hands, which worsens with lifting (Tr. 43, 47). Finally, she testified that she also gets spasms and sharp pains in her buttocks (Tr. 42).

Thereafter, the VE testified that Plaintiff's past relevant work as a housekeeper/cleaner was light and unskilled as generally performed in the national economy, and light to medium and unskilled as Plaintiff actually performed it (Tr. 65-66). The ALJ asked the VE to assume a hypothetical individual who was limited to medium work that involved no climbing of ladders, ropes, or scaffolds; only occasional crawling; and no more than frequent bilateral overhead reaching (Tr. 66-67). Additionally, the individual was limited to jobs involving simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes, and only occasional superficial interaction with the public (Tr. 66-67). The VE testified that the hypothetical individual would be capable of performing Plaintiff's past relevant work as a housekeeper/cleaner, both as she had actually performed it, and as it was generally performed in the national economy (Tr. 67). The ALJ asked the VE to additionally assume that the hypothetical individual could only occasionally climb ramps or stairs, and the VE testified that the hypothetical individual could still perform Plaintiff's past relevant work as it was generally and actually performed (Tr. 67).

## V.     **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. 404.1520© and 416.920(C)(1992);

6

   3.      If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. 404.1520(d) and 416.920(d) (1992);

   4.      If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e) and 416.920(e) (1992);

   5.      If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision,

even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## **VII. ANALYSIS**

Plaintiff raises three issues:

I. Whether substantial evidence supports the ALJ's residual functional capacity determination that Plaintiff is capable of performing medium work with additional restrictions.

II. Whether the ALJ provided a proper medical basis for his determination that Plaintiff did not meet the requirements for Listing 1.04A

III. Whether the ALJ erred by relying on vocational testimony, given in response to an inadequate hypothetical question, while disregarding the portion of the expert's testimony that responded to limitations established in the record.

In his opinion, the ALJ found that Plaintiff had degenerative disc disease of the lumbosacral spine, cervical spine sprain/strain, bilateral sacroilitis, and depression, impairments that were severe but that did not meet or equal the criteria of any of the listed impairments (Tr. 11-12, Findings 3-4). The ALJ also found that Plaintiff had the residual functional capacity to perform medium work that required no climbing of ladders, ropes, or scaffolds, no more than occasional climbing of ramps or stairs, stooping, kneeling, crouching, and crawling; no more than frequent bilateral overhead reaching;

8

and only simple, routine, and repetitive tasks that were performed in a work environment free of fast-paced production requirements and involving only simple work-related decisions, routine workplace changes, and occasional and superficial interaction with the public (Tr. 14, Finding 5). Based on the VE's testimony, the ALJ found that Plaintiff would be capable of performing her past relevant work as a housekeeping cleaner (Tr. 17, Finding 6). Accordingly, the ALJ found that Plaintiff was not disabled (Tr. 17, Finding 7).

Plaintiff argues that the ALJ did not give enough weight to Dr. Patel's treating physician opinions in finding that she could perform a limited range of medium work (Pl's Br. at 12-14).

The opinion of a treating physician as to the nature and severity of an impairment is only entitled to controlling weight if it is well supported by medically-acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the case. 20 C.F.R. Sections 404.1527(d), 416.927(d). Here, the ALJ explained that he gave substantial weight to the opinions expressed in Dr. Patel's progress notes since January 2009, the month of Plaintiff's alleged onset of disability (Tr. 15).

Furthermore, the ALJ noted that Dr. Patel never opined that Plaintiff was unable to work (Tr. 16). In fact, on January 7, 2009, twenty days prior to Plaintiff's alleged onset of disability, Dr. Patel opined that Plaintiff was able to continue with work activities (Tr. 16, 393). Nine months after Plaintiff's alleged onset, on September 29, 2009, Dr. Patel again opined that Plaintiff was capable of working (Tr. 372). On December 22, 2009, nearly a year after Plaintiff's alleged onset of disability, Dr. Patel again opined that Plaintiff was able to work (Tr. 368). In support of this opinion, Dr. Patel reported that Plaintiff's condition was stable; she had no difficulty with walking and standing, and she had only mild tenderness and mostly normal ranges of motion of her cervical and lumbar spines (Tr. 16, 364, 371, 379, 392).

9

In addition, the ALJ noted that Dr. Patel consistently reported that the intensity of Plaintiff's neck and low back pain was only mild to moderate and variable in nature and degree (Tr. 15, 362, 364, 366, 368, 371, 373, 375, 377, 379, 424,. 426, 428, 430, 432, 434). The ALJ also indicated that Dr. Patel treated Plaintiff with only conservative measures, consisting of low dosages of narcotic pain relievers and home exercises to increase her flexibility, and he never prescribed an assistive device for walking (Tr. 357-435).

Thus, the ALJ determined that Dr. Patel's objective findings and opinions were generally consistent with the ability to perform a limited range of medium work. The ALS also considered Dr. Patel's notations that Plaintiff's pain was aggravated with bending and lifting, that she had difficulty with turning her neck in any direction, and that her problems caused her difficulty with walking, standing, and climbing or descending stairs as these problems were noted in the section of Dr. Patel's reports dealing with Plaintiff's subjective complaints (Tr. 396, 400, 402, 404, 426). However, these were Dr. Patel's recording of Plaintiff's own statements. Although Plaintiff reported increased subjective complaints, Dr. Patel's objective findings remained constant from 2009 to 2011 (Tr. 357-435). As a result of Plaintiff's complaints, Dr. Patel referred Plaintiff to pain management at MetroHealth (Tr. 358, 431). The ALJ accounted for Plaintiff's subjective complaints in his residual functional capacity finding by limiting her to jobs that required no climbing of ladders, ropes or scaffolds; no more than occasional climbing of ramps or stairs, stooping, kneeling, crouching, and crawling; and only frequent bilateral overhead reaching (Tr. 14, Finding 5).

Plaintiff also argues that the ALJ had difficulty interpreting Dr. Patel's opinion because Dr. Patel did not specify time restrictions with regard to activities such as standing and lifting. Hence, the ALJ should have ordered a physical consultative examination or called on the services of a medical expert (Pl's Br. at 13). Nevertheless, the ALJ did rely on the opinion of an expert, that of reviewing

state agency physician Dr. Klyop, who reviewed Dr. Patel's notes and assessed that they supported a residual functional capacity for a limited range of medium work (Tr. 16, 351). *See,* 20 C.F.R. Sections 404.1527(f), 416.927(f); Social Security Ruling (SSR) 96-6p. Since the regulations specify that the issue of residual functional capacity is reserved to the ALJ at the hearing level of review, he is required to make such a determination. *See,* 20 C.F.R. Sections 404.1527(e)(2), 416.927(e)(2), 404.1546(c),416.946©.

Plaintiff argues that the ALJ could not rely on Dr. Klyop's residual functional capacity assessment because it was made before all of the evidence had been submitted (Pl's Br. 13-14). However, it is clear in the record that the ALJ considered the later-submitted reports, along with all of the other evidence, in assessing Plaintiff's residual functional capacity (Tr. 14-17). Here, the ALJ stated that he considered the "entire record" in deciding Plaintiff's case, and he cited the later-submitted reports in his decision (Tr. 14-17). Hence, the ALJ properly evaluated the physician opinion evidence in making his residual functional capacity finding.

Plaintiff also argues that the ALJ unfairly and inaccurately evaluated the evidence in finding that Plaintiff was not disabled (Pl's Br. at 14-16). However, the undersigned finds that the ALJ fairly and accurately evaluated all of the evidence in making his decision.

Next, Plaintiff argues that it was unfair for the ALJ to consider the fact that she had left her most recent job, not because of her alleged disability, but because she was fired after getting into an argument with her boss (Pl's Br. at 14). Plaintiff claims that the fact that she was fired for arguing with her boss was simply additional evidence of her disability, showing that she could not get along with others in a work environment (Pl's Br. at 14-15). However, in light of the fact that Plaintiff then went on to collect unemployment benefits until a month before her disability hearing in February of 2011,

the ALJ was correct to infer that Plaintiff's reasons for leaving her most recent job had little to do with her claims of disability (Tr. 37). Furthermore, Plaintiff testified that she was able to push herself to work if she had to (Tr. 37).

Thereafter, Plaintiff argues that the ALJ should not have considered the fact that Dr. Patel, Plaintiff's treating physician, did not prescribe her a cane (Pl's Br. at 15-16). However, it was correct for the ALJ to consider this fact in assessing Plaintiff's claims of difficulties with walking. Dr. Patel went on to report that Plaintiff had no significant difficulties with standing or walking and reported no objective findings in support of such limitations (Tr. 357-435). Plaintiff also testified that she had asked Dr. Patel to prescribe her a cane, but he refused to do so (Tr. 63). Dr. Patel's refusal to prescribe Plaintiff a cane supports the ALJ's conclusion that Plaintiff did not need an assistive device to ambulate, and it was reasonable for the ALJ to consider this fact in finding that she was not disabled.

The record reflects that, despite Plaintiff's complaints of pain, she did not follow through on Dr. Patel's two referrals to pain management (Tr. 357-58, 431). Therefore, it was reasonable for the ALJ to infer that because Plaintiff did not follow through on Dr. Patel's referrals, her pain and limitations were not as great as she alleged.

Next, Plaintiff argues that the ALJ incorrectly concluded that she did not meet listing 1.04A (disorders of the spine) because the ALJ is not qualified to decide this issue (Pl's Br. at 16-17). Plaintiff argues that the ALJ was required to call on the services of a consultative examiner or a medical expert to make this determination (Pl's Br. at 17). However, the determination of whether or not a claimant meets a listed impairment is a legal issue, and is reserved solely to the Commissioner. *See,* 20 C.F.R. Sections 404.1527(e), 416.927(e). Hence, the ALJ correctly acted as the decision-maker in finding that Plaintiff did not meet listing 1.04A.

In order to meet a listing, Plaintiff must show that all of the criteria of that listing are met. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990). In this case, the ALJ determined that Plaintiff did not meet listing 1.04A because an MRI of Plaintiff's lumbar spine showed no evidence of nerve root compression (Tr. 12, 360). There was no cord signal abnormality and no canal or foraminal stenosis (Tr. 360). In addition, there was no evidence that Plaintiff had any motor loss accompanied by sensory or reflex loss, and positive straight leg raising tests in the sitting and supine positions. Dr. Patel did not report any findings of muscle atrophy or sensory or reflex loss (Tr. 357-435). The majority of Plaintiff's straight leg raising tests were negative because she experienced pain at greater than 60 degrees (Tr. 357, 371, 396, 400, 402, 420, 424, 430, 432, 434).

Since Plaintiff failed to prove that she met all of the criteria of listing 1.04A, substantial evidence supports the ALJ's finding that she did not meet this listing.

Finally, Plaintiff argues that the ALJ erred in disregarding the VE's testimony that if she could not rotate, bend, or extend her neck it would preclude the performance of all jobs (Pl's Br. at 17-19, Tr. 69). However, it is well-established that an ALJ is required to incorporate only those limitations that he accepts as credible in his hypothetical question to a VE. *See, Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). In this case, because the ALJ found Plaintiff's subjective complaints of neck immobility to be not credible, he decided not to credit the VE's responses to a hypothetical question which was premised on those complaints (Tr. 1 5).

Based on a hypothetical question that included all of Plaintiff's credible limitations, the VE testified that she would be capable of performing her past relevant work as a housekeeper/cleaner (Tr. 67). Hence, the undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff was not disabled.

13

**VIII.** **CONCLUSION**

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform her past relevant work, and, therefore, was not disabled.  Hence, she is not entitled to DIB and SSI.


Dated: June 26, 2012                                    */s/George J. Limbert*
                                                                         GEORGE J. LIMBERT
                                                                         UNITED STATES MAGISTRATE JUDGE